**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NINA MATRUNICH, | No. CIV S-09-1424-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 18).

**I. PROCEDURAL HISTORY**

Plaintiff applied for social security benefits protectively on April 28, 2006. In the application, plaintiff claims that her disability began on October 1, 2003. Plaintiff claims that her disability is caused by a combination of back pain, chest pain, severe obesity (BMI of 57),

1

varicose veins, high blood pressure, left hand pain, and leg pain.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 2, 2008, before Administrative Law Judge ("ALJ") Mark C. Ramsey.  In a June 10, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 28, 2006, the application date (20 CFR 416.920(b) and 404.971 *et seq*.).
>
> 2. The claimant has the following severe impairment: Varicose veins in the lower extremities, and morbid obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.
>
> 5. The claimant is capable of performing her past relevant work as a Bookkeeper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since April 28, 2006 (20 CFR 416.920(f)), the date the application was filed.

After the Appeals Council declined review on March 25, 2009, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized below:

2

<u>Treating Physician</u>

<u>Medical Records</u>[1]

Plaintiff had a California Refugee Health Assessment completed on December 6, 2005, about one month after her arrival in the United States as a refugee. The assessment noted Plaintiff was severely obese, with a BMI of 57. She had swelling and redness in her right lower extremity, and follow up was needed to rule out DVT (deep venous thrombosis) following the long flight from Russia. Her blood pressure was 144/82.

On February 1, 2006, Plaintiff had an echocardiogram due to hypertensive heart disease and chest pain. The findings indicate that the study was technically very limited, including limited echo penetration of cardiac structures due to massive obesity. The conclusions from this limited study revealed grossly preserved LV systolic chamber size and function, and no obvious ventricular hypertrophy.

Plaintiff was seen several times in 2006 at Manzanita Medical Clinic, but the hand written notes are mostly illegible. In 2006, she was seen on February 14, February 28, April 28, and June 6. At each of these visits, Plaintiff's obesity and varicose veins were noted. The doctor also identified trace edema in April 2006, and mentions edema again in June 2006. He discussed diet and the possibility of bariatric surgery.

On April 20, 2007, Plaintiff was seen for a cough. It was noted Plaintiff has hypertension, morbid obesity, and venous insufficiency. She was seen again on August 13, 2007, for what appears to be a regular evaluation, perhaps reporting chest pain.

Plaintiff was seen on September 27, 2007, apparently for pain in her knees and back. She was referred for an x-ray of her lumbar spine and right knee, which were performed the same day. The notes continue to indicate morbid obesity, noting her BMI at 61. In addition, it

---

[1] The treatment records are from Manzanita Medical Clinic, and are largely illegible. Plaintiff identified her treating physician as Dr. Zilber. Dr. Greenberg is also identified as a treating physician. Both of these physicians are apparently associated with the Manzanita Medical Clinic.

appears that the notes indicate no edema, but it is unclear.  The lumbar spine x-ray showed:

> Bilateral pars defects of L5 posterior elements are noted without significant anterolisthesis.  Normal alignment of the spinal column.  Incidentally noted are triangular shaped bone fragments adjacent to the anterosuperior end plates of L4 and T12, which could represent limbus vertebra versus anterior Schmorl's nodes.  They appear well corticated.  Acute etiology is unlikely.
> There is no evidence of scoliosis on the frontal view.  Vertebral body heights are preserved.  Disc spaces are normal as well.  The spinal canal appears patent throughout.  No evidence of significant posterior element or neural foraminal degenerative changes.  No transverse process fractures.

> The impression was:

> 1. Bilateral L5 pars defects.
> 2. Limbus vertebrae versus anterior Schmorl's nodes within the anterosuperior end plates of L4 and T12, likely chronic.
> 3. Normal alignment of the spinal column.  No evidence of vertebral body compression fractures or significant degenerative changes.

> The knee x-ray showed:

> There is sharpening of the tibial spines, as well as mild joint line spurring medially and laterally indicative of degenerative changes.  No evidence of significant joint space narrowing.  Within the patellofemoral joint, there is osteophytic spurring superiorly and inferiorly arising from the patella, as well as narrowing of the lateral patellofemoral articulation.  No evidence of chondrocalcinosis or loose foreign bodies.  No evidence of knee fracture.  No evidence of joint effusion or soft tissue abnormality.

The impression was "Mild to moderate degenerative changes of the knee.  No evidence of acute pathology." (CAR 281-82).

Plaintiff was next seen on October 25, 2007, for an evaluation.  Her condition was noted as stable.  It appears Plaintiff was to be scheduled for bariatric surgery, and abdominal ultrasound for gallbladder disease.  The abdominal ultrasound was done on November 8, 2007.  The ultrasound was limited, but did find a large gallstone.  The impression was fatty liver and cholelithiasis.

On January 15, 2008, Plaintiff was assessed with morbid obesity, osteoarthritis, and hypertension.  She was seen again on February 15, 2008, for what appears to be some acute

4

1 symptoms including low grade fever, but the notes are mostly illegible.

2     Physical Assessment

3     Plaintiff's treating physician completed an assessment of her abilities on April 20,
4 2007.  Although mostly illegible, it appears Plaintiff was diagnosed with hypertension, morbid
5 obesity, and chronic venous insufficiency.  The doctor assessed Plaintiff with the ability to walk
6 less than one hour total, stand for less than one hour total, and sit for two to four hours total, due
7 to her morbid obesity, venous insufficiency.  He determined Plaintiff could lift and/or carry five to
8 ten pounds frequently, but is not restricted in climbing stairs or ladders, or bending.  She does not
9 require any rest periods during the day.  The doctor opined Plaintiff is capable of performing at
10 least the full range of sedentary work, but would not be able to work an eight-hour day five days
11 per week due to her morbid obesity and hypertension.  He further stated Plaintiff does not
12 experience pain due to her impairments, and he would expect improvement in her condition if she
13 were to have bariatric surgery in the future.

14     Another assessment was done September 27, 2007.  In this assessment, Plaintiff's
15 doctor found her capable of standing or walking for zero to two hours at a time due to morbid
16 obesity, dyspnea, and her knees, and able to sit for zero to two hours at a time.  No restrictions
17 were noted for Plaintiff's use of her hands and/or fingers, or for environmental factors.  The use of
18 her feet for repetitive movements is limited due to morbid obesity, arthritis of both knees, and
19 chronic venous insufficiency.  Plaintiff's ability to lift was noted to be only occasionally lifting ten
20 pounds.  It is also noted she can only occasionally climb, kneel, crouch, crawl, or reach below her
21 waist; but she is able to constantly balance, stoop, and reach above her waist.

22     Consultative Examinations

23         Psychiatric Evaluation, Pavitar S. Cheema, M.D.

24     Plaintiff attended a consultative psychiatric evaluation on July 5, 2006.  Her
25 presenting complaint was "big depression."  Many of her complaints were physical, but she also
26 reported difficulty with sleep and stress.  She has no history of past psychiatric care.  She reported

5

living with her husband and two children, that her husband and daughter take care of all the chores, but she will sometimes visit with friends and she goes to church. Dr. Cheema noted Plaintiff's marked obesity, slow gait, and retarded psychomotor activity. Plaintiff's contact with reality and insight were intact, her affect was appropriate, her thinking was clear, and her memory was intact. Dr. Cheema's diagnosis was dysthymic disorder, and Plaintiff's GAF was 70. Dr. Cheema found Plaintiff

> presents a history of several medical problems and severe obesity. She complains of pain all over her body and states that she is in severe pain all of the time and gets headaches. Based on the history provided by the patient and the current mental status examination, secondary to depression, she can have mild to moderate problems maintaining attention, concentration, persistence and pace in a normal eight hour a day job. She can have mild problems remembering, understanding and carrying out complex job instructions. She should be able to deal with changes in routine work settings. She should be able to handle the stress and pressure associated with an eight hour a day job. She should be able to remember, understand and carry out simple job instructions. She should be able to perform simple, repetitive tasks. She has no difficulty interacting with the public, coworkers and supervisors. Her social interactions are good. She needs help taking care of activities of daily living secondary to her physical problems. Prognosis for this patient is based on the prognosis of her physical complaints. She should be able to handle her benefit fund.

(CAR 178-79).

<u>Internal Medicine Evaluation, Jenna Brimmer, MD</u>

Plaintiff attended an internal medicine consultative examination on August 16, 2006. Her chief complaints were right leg pain and swelling. Plaintiff reported right leg pain and swelling below her knee, which had been present for three years, but was increasingly severe. She rated her pain between five and nine out of ten, reporting that it was worse with sitting with her leg down, standing or walking twenty minutes, and going up or down stairs. The pain decreased when she woke up in the morning and when she took pain medication. As to her daily living, Plaintiff reported she can perform her own hygiene, but her daughter supervises her when she is in the shower because of some unsteadiness. She also reported cooking and dishes in a seated

position if possible.  She does not mop or vacuum, due to leg pain, nor does she do laundry, because of stair climbing limitations.

Dr. Brimmer found Plaintiff to be morbidly obese, but was able to sit in a chair comfortably, get up from the seated position without the use of her upper extremities, and had no difficulty moving about the exam room or on and off the exam table.  She was able to manipulate her clothing, and was able to bend over spontaneously to pick up her purse from the ground.  Plaintiff was 5' 6" and 378 pounds.  Her blood pressure was 130/90.  She was able to ambulate without a limp, had a negative Romberg, no dysmetria, and was able to heel-to-toe in a straight line.  She had full range of motion.  Plaintiff did have a band of brawny erythema about halfway between her knee and ankle, which was about ten centimeters in width.  There was some induration as well as tenderness to palpitation, but no measurable swelling compared to the left.  Plaintiff's motor strength was 5/5, she was able to stand on her tiptoes and heels, and perform a full squat.

Dr. Brimmer's diagnosis was: "1.  High blood pressure, being medically treated.  2.  History of right lower extremity pain and swelling.  The claimant does have some brawny erythema that suggests venous insufficiency, possibly an old cellulitis.  The claimant had no decreased range of motion or weakness related to this complaint." (CAR 192).  Dr. Brimmer assessed Plaintiff with no functional limitations.

<u>Physical Residual Functional Capacity (RFC) Assessment</u>

An agency RFC, dated October 2, 2006, noted Plaintiff's diagnosis as obesity, hypertension, and varicose veins.  Exertional limitations were found to be occasionally lifting 50 pounds, frequently 25 pounds; standing and/or walking about six hours; sitting about six hours; and unlimited ability to push and/or pull.  Postural limitations were found to be occasionally climbing ramps or stairs, stooping, kneeling, crouching and crawling, but frequently balancing.  No manipulative, visual, or communicative limitations were established.  Environmental limitations included avoiding concentrated exposure to extreme heat, humidity, and hazards, due

to morbid obesity and 'unsteadiness.'

### Psychiatric Review Technique

Agency review on October 16, 2006, noted affective disorders, dysthymic disorder. Plaintiff's functional limitations were noted as a mild limitation in her ability to maintain social functioning, and a moderate limitation in her ability to maintain concentration, persistence or pace.

### Mental Residual Functional Capacity Assessment

An agency RFC, dated October 16, 2006, noted Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work day and workweek without interruptions, and accept instructions and respond appropriately to criticism from supervisors. She was not found to be significantly limited in any other aspect, and retains the capacity to perform simple tasks over protracted periods without disturbance relating to others.

### Hearing Testimony

At the administrative hearing, Plaintiff appeared with her attorney/representative and testified through an interpreter. Plaintiff testified that she was 44 years old, right handed, married, living in an apartment with her husband. Her husband works as a mechanic. She has two children, sixteen and seventeen. She is from Belarus, Russia, where she had attended school through tenth grade. She does not speak English. She came to the Untied States on November 17, 2005, but is not yet a citizen.

She worked as a bookkeeper in Belarus from 1981 to 2003. She did not officially stop working until the beginning of August 2005, but that was only on paper as she used her sick leave. She only worked a couple of days every two to three months. Between 2003 and 2005, she only worked for about a month total. She has not worked in the United States.

/ / /

/ / /

Plaintiff testified she does not change the sheets on the bed, do laundry, vacuum, mop, or scrub the tub. She makes one or two meals a week. She does not go grocery shopping, her husband and daughter do the shopping. She goes to church two to three times a month; the service lasts one-and-a-half hours. She does not do volunteer work for the church or participate in church activities. Her exercise is walking a bit, about ten minutes in two days. She enjoys reading. She does make sandwiches and soup, which are light and easy to do.

She takes prescription medication for joint pain, ibuprofen, and Atenolol for high blood pressure. Her most serious problem which prevents her from working is high blood pressure, but also chewing problems and problems with her right leg. Since 2003 she has had vein problems in her right leg, and her leg becomes blue and gets very swollen. She has to put her leg up often. She has not had surgery on her leg, but they may be doing thrombosis soon. Her joint problems are in her hands, wrists, knees and recently her back. She experiences pain every morning, and also has numbness in her hands and legs.

She stated she cannot stand more than ten minutes or walk more than ten to fifteen minutes. She has problems sitting in a chair, and needs to change positions very often. She is about 5'6" and weighs about 405 pounds. She spends her day showering in the morning and taking her medication. If she feels okay, she can make her own breakfast; if not her daughter makes it. She takes more medication before lunch, and then she needs to lay down and get dressed. She needs to lay down and put her leg up because it gets numb and swollen. When she sits, she will read for a little bit. She can walk around her apartment.

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV. DISCUSSION

Plaintiff argues the ALJ erred in three ways: (1) the ALJ improperly determined Plaintiff's severe impairments; (2) the ALJ failed to properly credit the treating physician's opinion; and (3) the ALJ failed to properly assess Plaintiff's Residual Functional Capacity (RFC).

### A. Severe Impairments

Plaintiff argues the ALJ misunderstood her impairments and did not properly consider her obesity.  She states that what the ALJ called varicose veins was actually chronic venous insufficiency.  In addition, the ALJ failed to include her mild to moderate knee arthritis, which when taken into consideration with her obesity and chronic venous insufficiency, should have been considered a serious impairment.  In so doing, the ALJ ignored the Consultative Examiner's (CE) mentioning of probable chronic venous insufficiency as well as that of the treating physician.

Defendant argues the label the ALJ used for Plaintiff's leg impairment is a distinction without a difference, in that both diagnoses described the same condition and the ALJ

10

understood the symptoms. In addition, whether or not Plaintiff's knee condition was characterize as a severe impairment, the ALJ properly assessed her allegations of knee pain and swelling. As to Plaintiff's allegation of need for leg elevation and pain, Defendant argues that her own treating physician opined that she had no pain due to her impairments, nor is there any objective or opinion evidence which documents a need for elevation. The medical notes indicate no swelling or edema, and no restricted range of motions.

In reply, Plaintiff argues her doctor did find edema and necessity for supporting stockings. The CE also noted a history of leg tenderness and swelling. Assessing Plaintiff's obesity and the brawny erythema the CE noted, which did not meet the listing requirements itself, but taken together should have been found to be equivalent or at least triggered the ALJ's duty to develop the record by consulting a medical expert.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

11

impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Here, as to Plaintiff's knee condition, the ALJ found "her x-ray showed mild to moderate degenerative change of the knee with no evidence of acute pathology." (CAR 13). In addition, the ALJ noted that "[w]hile she alleged chronic back and knee pain, the claimant does not demonstrate the inability to ambulate effectively due to chronic nonradicular pain and weakness, as defined in sections 1.00B2b and 1.04C." (CAR 14). The ALJ's finding that her knee condition was not a severe impairment on its own was based on substantial evidence.

In addition to determining whether Plaintiff's knee condition was a severe impairment on its own, the ALJ also addressed Plaintiff's obesity in relation to her other impairments. The ALJ noted that obesity is a risk factor, but that individuals with obesity do not necessarily have any of the impairments obesity can cause or contribute to. The ALJ found Plaintiff's obesity has not led to complications such as peripheral vascular disease, or hypertensive cardiovascular disease, and that Plaintiff's obesity may increase the severity or functional limitations of her other impairments, but not to the point of permanent disability. Thus, the ALJ adequately addressed Plaintiff's obesity in combination with her other alleged impairments, including her knees.

Finally, Plaintiff argues the ALJ used the wrong label for her leg condition, calling it varicose veins instead of chronic venous insufficiency. Plaintiff does not, however, articulate any actual error based on the label given for her condition.[3] The ALJ acknowledged a serious impairment in her leg, and the CE's suggestion that the brawny erythema on her leg may be related to venous insufficient. However, the ALJ also noted that she did not have any decreased range of motion or weakness related to this complaint. Plaintiff argues that the ALJ failed to

---

[3] The court also notes that Plaintiff referred to her leg condition as varicose veins in her application. (See e.g., CAR 86).

consider the edema she had due to her leg condition, but as the Defendant points out, her own treating physician failed to find edema at most of her examinations. Plaintiff cites to three notations of edema in the record, but the undersigned has found numerous indications in the record that Plaintiff did not suffer from edema. In addition, at least one of the citations Plaintiff provides as support for argument appears to note, so far as the undersigned can read, that there was no edema noted. (CAR 271 ("no edema, slightly tender, no restrictions")). Another note is almost completely illegible, but also seems to indicate no edema. (CAR 293). Finally, the ALJ did find Plaintiff's leg condition to be severe. However, as discussed below, he found that Plaintiff did not have any limitations based on that severe condition. Plaintiff fails to show how a different label for her condition would have had any effect on that finding.

The undersigned finds the ALJ's determination of plaintiff's serious impairments to be supported by substantial evidence.

### B. Medical Opinions

Plaintiff argues the ALJ erred in failing to address two of three treating physician assessment forms, ignoring references to her chronic venous insufficiency, and disregarding the only treating physician opinion he chose to notice without specific and legitimate reasons. Defendant responds that the ALJ properly rejected the treating physician's opinion, and gave several legitimate reasons for rejecting the opinion. Those reasons included the lack of objective medical support, inconsistency, and contradictory medical opinions.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

13

Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Here, the ALJ stated he

> rejects the residual functional capacity assessment completed by Dr. Arnold Greenberg in April of 2007 as inconsistent with and not supported by the medical record of evidence. The assessment is contradictory as Dr. Greenberg found the claimant was only capable of the full range of sedentary work due to her restrictive morbid obesity. However, he also noted that she did not require rest periods during the day. Nor was she restricted in bending or climbing

1 | ladders or stairs.  Dr. Greenberg concluded that she could stand or
2 | walk less than one hour during an 8-hour workday.  She could sit for two to four hours during a workday, and she could only lift and
3 | carry five to ten pounds frequently (Exhibit 13F).  Dr. Greenberg's opinion is not supported by any other medical consultant who has examined the claimant.
4 (CAR 16).

Plaintiff disagrees with the ALJ's reasons for rejecting Dr. Greenberg's opinion. She argues that Dr. Greenberg's opinion is consistent with and supported by the record, is not internally inconsistent (or at least that the contradiction can be explained due to lack of sophistication), and the CE's opinion is inadequately supported for the ALJ to have relied on.

The undersigned is not persuaded by Plaintiff's arguments.  The ALJ discussed Plaintiff's treating physician opinion, and found it was inconsistent and contrary to other medical opinions in the record.  Where there are contradictory opinions in the record based on independent clinical findings, the ALJ may reject a treating physician's opinion based on specific and legitimate reasons.  Here, the ALJ set forth his reasons for rejecting Plaintiff's treating physician's opinions.  Those reasons are supported by the record.  The CE, following a complete examination, found Plaintiff was not limited in her functional abilities.  This opinion was supported by her clinical examination and observations, whereas the undersigned did not find any objective clinical findings supporting Dr. Greenberg's opinion nor does Plaintiff identify any.

The ALJ's finding that Dr. Greenberg's opinion was internally inconsistent, contrary to Plaintiff's argument, is supported by the record.  Dr. Greenberg opined Plaintiff was significantly limited in her abilities to walk, stand and sit, but, after being provided the explanation of functional capacities, he opined Plaintiff was capable of sedentary work ("F") which clearly identified sitting for at least six hours.  (CAR 262-65).  This is inconsistent.  In addition, Dr. Greenberg noted that she was not able to work an eight-hour day due to her obesity, but also stated she does not require any resting periods during the day.  He fails to explain why Plaintiff is incapable of working an eight-hour day, but has no need to rest during the day.  The second evaluation, which is not specifically addressed by the ALJ, does not provide any

explanation for the prior inconsistency. In the second evaluation, Dr. Greenberg opines Plaintiff was only capable of standing and walking zero to two hours at a time, and sitting for zero to two hours at a time, but did not set forth a limitation as to the total hours during the day which Plaintiff could sit, stand and/or walk.

It is not for this court to substitute its opinion for that of the ALJ. Rather, the court evaluates the ALJ's decision and if it is supported by substantial evidence, the decision is to be affirmed. The undersigned finds substantial evidence supported the ALJ's decision to reject Dr. Greenberg's opinion.

### C. Residual Functional Capacity

Plaintiff argues the ALJ erred in failing to consider her knee arthritis in formulating her RFC. She also argues the ALJ's RFC failed to consider her treating physician's opinion and all of her conditions.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.

As discussed above, the ALJ used proper reasons for rejecting Plaintiff's treating physician's opinion as to her limitations. As such, Plaintiff's argument that the ALJ erred by not considering Dr. Greenberg's opinion in formulating her RFC is unpersuasive. In addition, the ALJ did consider her knee condition, and used proper reasons for finding no limitations based on her x-ray which showed mild to moderate degenerative changes of the knee. Even when taking into consideration her obesity, the ALJ found no inability to ambulate effectively. This determination was supported by the CE's findings, and the undersigned has determined there was no error in the ALJ's reliance thereon.

///

To the extent Plaintiff argues the ALJ failed in his duty to develop the record, the undersigned does not agree.  The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See id.

Plaintiff has not established the record was so ambiguous or inadequate as to trigger the duty to develop any further than the ALJ did by obtaining the consultative examinations.  As such, the undersigned finds no error in the ALJ's determination that Plaintiff is capable of the full range of light work.  He adequately supported his determination, relying on the CE's opinion, setting forth his reasons for rejecting Dr. Greenberg's opinion, and discussing Plaintiff's activities.  The ALJ's determination was based on substantial evidence in the record, and the undersigned finds no error.

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 18) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: June 25, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

17